**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————     x

HEIDI ARREOLA and TIM DOSTAL,                     :
individually on behalf of themselves              :
and all others similarly situated,                :        Case No.
                                                  :
               Plaintiffs,                     :
v.                                                :
                                                  :
                                                  :        **CLASS ACTION COMPLAINT**
Kimberly-Clark Corporation,                       :
                                                  :        **JURY TRIAL DEMANDED**
              Defendant.                      :
                                                  :
                                                  :
——————————————————————     x

       Plaintiffs, Tim Dostal and Heidi Arreola (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

    1.    This action seeks to remedy the deceptive and misleading business practices of the Kimberly-Clark Corporation (hereinafter "Defendant") with respect to the marketing and sales of the Scott Naturals Flushable Cleansing Cloths (hereinafter the "Product") throughout the State of New York and throughout the country.

    2.    Defendant manufactures, sells, and distributes the Product using a marketing and advertising campaign centered around claims that appeal to health conscious consumers, i.e., that

1

its Product is "Natural."  However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product contains non-natural, synthetic ingredients.

3.      Plaintiffs and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Product is "Natural" when purchasing the Product.  Plaintiffs and Class Members paid a premium for the Product over and above comparable products that did not purport to be "Natural." Given that Plaintiffs and Class Members paid a premium for the Product based on Defendant's misrepresentations that it is "Natural," Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its express and implied warranties regarding the Product.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desires for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2010, sales of

natural products grew 6% to $117 billion.[1]  Reasonable consumers, including Plaintiffs and

Class Members, value natural products for important reasons, including the belief that they are

safer and healthier than alternative products that are not represented as natural.

6.      Despite the Product containing a number of synthetic ingredients, Defendant

markets the Product as being "Natural". The Product's labeling is depicted below:

---

[1] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 3, 2015),
http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a1
5ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008,
available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We
Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012),
http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous
synthetic chemicals that were once marketed as safe).

**Scott Naturals Flushable Cleansing Cloths**



**Synthetic Ingredients:**

Sodium Chloride
Sodium Benzoate
Phenoxyethanol
Malic Acid
Polysorbate 20
Lauryl Glucoside
Sorbic Acid

7.      Defendant's representations that the Product is "Natural" is false, misleading, and deceptive because the Product contains multiple ingredients that are, as explained below, synthetic.

   a.   **Sodium Chloride** is a synthetic and hazardous chemical substance. [2]

   b.    **Lauryl Glucoside** is a synthetic surfactant or dispersant.  It is synthesized by reacting an alcohol or mixture of alcohols with a cyclic form of glucose or glucose polymers.[3]

   c.   **Sodium benzoate** is a synthetic preservative.[4]  Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases.  The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated.  It does not occur naturally.[5]  Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[6] When sodium benzoate combines with ascorbic acid (an ingredient common in many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.

---

[2] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf
[3] http://www.ewg.org/skindeep/ingredient/703445/LAURYL_GLUCOSIDE/.
[4] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/;
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[5] 21 C.F.R. § 184.1733.
[6] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

d.  **Malic Acid** is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. L
(+) malic acid, referred to as L-malic acid. Racemic DL-malic acid does not occur
naturally. It is made commercially by hydration of fumaric acid or maleic acid,
and is therefore synthetic. *See* 21 C.F.R. §184.1069.

e.  **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent. *See* 21
C.F.R. § 178.3400.

f.  **Sorbic Acid** is a synthetic preservative.  *See* 21 C.F.R. § 182.3089.  It is produced
commercially by condensing crotonaldehyde and ketene in the presence of boron
trifluoride.

g.  **Phenoxyethanol** is toxic by definition under federal law, based on animal testing
demonstrating that the substance is lethal even in very small doses. Even short
exposure could cause serious temporary or residual injury. It is toxic to the
kidneys, the nervous system, and the liver. It is extremely hazardous in case of
eye contact and very hazardous in case of skin contact (defatting the skin and
adversely affecting the central nervous system and peripheral nervous system,
causing headaches, tremors, and central nervous system depression). It is also
very hazardous in case of ingestion or inhalation. It degrades into substances that
are even more toxic. It is a category 2 germ cell mutagen, meaning that it is
suspected of mutating human cells in a way that can be transmitted to children
conceived after exposure. Phenoxyethanol is an ethylene glycol ether, which is

known to cause wasting of the testicles, reproductive changes, infertility, and

changes to kidney function. Phenoxyethanol is also category 2 carcinogen,

meaning that it is suspected to induce cancer or increase its incidence.

8.      Whether Defendant's labeling of the Product as "Natural" is deceptive is judged

by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a

reasonable consumer believes the term natural means, one can look to the regulatory agencies for

their guidance.

9.      In 2013, the United States Department of Agriculture ("USDA") issued a Draft

Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).

In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is

manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or

biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a

substance is transformed into one or more other distinct substances) so that it is chemically or

structurally different than how it naturally occurs in the source material; or (c) the chemical

change was created by a naturally occurring biological process such as composting,

fermentation, or enzymatic digestion or by heating or burning biological matter. **(Exhibit A).**

10.      Congress has defined "synthetic" to mean "a substance that is formulated or

manufactured by a chemical process or by a process that chemically changes a substance

extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502

(21).

7

11.     Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Product, means that the goods are free of synthetic ingredients.

12.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

13.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Product's packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

14.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Product in order to confirm or debunk Defendant's prominent front-of-the-Product claims, representations, and warranties that the Product is "Natural."

15.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Product is "Natural" and does not contain synthetic ingredients.

16.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false

description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

17.     Consumers rely on label representations and information in making purchasing decisions.

18.     The marketing of the Product as "Natural" in a prominent location on the label of the Product, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

19.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

20.     Plaintiffs and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

21.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class members.

22.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a Product labeled "Natural" over comparable products not so labeled.

9

23.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class members in that they:

  a.  Paid a sum of money for a Product that was not what Defendant represented;

  b.  Paid a premium price for a Product that was not what Defendant represented;

  c.  Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

  d.  Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

24.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Product they purchased, and, consequently, Plaintiffs and the Class members would not have been willing to purchase the Product.

25.     Plaintiffs and the Class members paid for a Product that was "Natural" but received a Product that was not "Natural." The Product Plaintiffs and the Class members received was worth less than the Product for which they paid.

26.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Product over the cost of competitive products not bearing a "Natural" label.

27.     Plaintiffs and the Class members all paid money for the Product. However, Plaintiffs and the Class members did not obtain the full value of the advertised Product due to

Defendant's misrepresentations and omissions. Plaintiffs and the Class members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiffs and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff Tim Dostal is a citizen of the State of New York and Defendant Kimberly-Clark Corporation is a citizen of the States of Wisconsin and Delaware; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

30.     Venue is proper because Plaintiff Tim Dostal and many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiff**

31.     Plaintiff Tim Dostal is an individual consumer who, at all times material hereto, was a citizen of Dutchess County, in New York State.  Plaintiff purchased the Product via online and/or from a retail store in New York State.

32.     Plaintiff Heidi Arreola, is an individual consumer who, at all relevant times hereto, was a citizen of San Diego County.  Plaintiff purchased the Product in 2017 at a Wal-Mart Store located in San Diego, California.

33.     The packaging of the Product Plaintiffs purchased contained the representation that it was "Natural." Plaintiffs believed that products which are labeled "Natural" did not contain synthetic ingredients. Plaintiffs believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. If the Product was truthfully labeled in the future Plaintiffs would purchase the Product in the immediate future.

34.     Had Defendant not made the false, misleading, and deceptive representation that the Product was "Natural," Plaintiffs would not have been willing to pay the same amount for the Product, and, consequently, they would not have been willing to purchase the Product. Plaintiffs purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. The Product Plaintiffs received was worth less than the Product for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

33.     Defendant Kimberly-Clark Corporation is a corporation with its principal place of business in Neenah, Wisconsin.  Defendant manufactures, markets, advertises and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

12

## CLASS ALLEGATIONS

34.     Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

35.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

36.     Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass").

37.     Plaintiff Arreola also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of California at any time during the Class Period (the "California Subclass").

38.     The Class and the New York and California Subclasses shall be referred to collectively throughout the Complaint as the Class.

39.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

40.  <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

41.  <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

      b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

      c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

      d.  Whether Defendant's false and misleading statements concerning its Product was likely to deceive the public;

      e.  Whether Plaintiffs and the Class are entitled to injunctive relief;

      f.  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

42.  <u>Typicality</u>: Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same

14

deceptive, misleading conduct and purchased the Defendant's Product.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

43.     Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiffs have no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

44.     Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

45.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

16

    i.    It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Product as being "Natural."

46.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

47.    Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Product.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiffs would purchase the Product again if the ingredients were changed so that they indeed were "Natural".

48.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.    <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Product has been purchased by thousands of people throughout the United States;

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

  i.   Resolution of the issues presented in the 23(b)(3) class;

  ii.  Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

  iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Product as being "Natural."

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendant's Product which was sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class. Their consumer protection claims are common to all

members of the injunctive Class and they have a strong interest in vindicating

their rights.  In addition, Plaintiffs and the Class are represented by counsel who is

competent and experienced in both consumer protection and class action

litigation.

49.     The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class

Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule

23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies

generally to the injunctive Class (i.e. Defendant has marketed its Product using the same

misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or

declaratory relief would benefit the entire injunctive Class as Defendant would be prevented

from continuing its misleading and deceptive marketing practices and would be required to

honestly disclose to consumers the nature of the contents of its Product. Plaintiffs would

purchase the Product again if the ingredients were changed so that they indeed were "Natural".

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiffs and New York Subclass Members)**

50.     Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

51.     New York General Business Law Section 349 ("GBL § 349") declares unlawful

"[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

furnishing of any service in this state . . ."

52.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Product.

53.     There is no adequate remedy at law.

54.     Defendant misleadingly, inaccurately, and deceptively present its Product to consumers.

55.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the New York Subclass Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

56.     Plaintiffs and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural."  Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

57.     Defendant's advertising and Product's packaging and labeling induced the Plaintiffs and the New York Subclass Members to buy Defendant's Product and to pay a premium price for them.

58.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the New York Subclass Members have been damaged thereby.

59.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiffs and the New York Subclass Members)

60.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

62.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

21

63.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as they misrepresent that the Product is "Natural".

64.     Plaintiffs and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Product which was—contrary to Defendant's representations—not "Natural."  Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

65.     Defendant's advertising, packaging and product's labeling induced the Plaintiffs and the New York Subclass Members to buy Defendant's Product.

66.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

67.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

68.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Product's packaging and labeling.

69.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product was and continue to be exposed to Defendant's material misrepresentations.

70.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, compensatory, treble and

22

punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**California Civ. Code § 1750** *et seq.*
**(On Behalf of Plaintiffs and California Subclass)**

71.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

72.     Plaintiffs bring this claim for violation of the Consumers Legal Remedies Act, CIV. CODE § 1750 *et seq.* ("CLRA"), on behalf of the Class.

73.     Under the CLRA, "goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes[.]" CIV. CODE § 1761(a).

74.     The Product is a "good" under Civil Code section 1761(a).

75.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

76.     Plaintiffs and the Class members are "consumers" under Civil Code section 1761(d).

77.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

78.     Defendant is a "person" under Civil Code section 1761(c).

79.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the

23

making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

80.     Defendant, on the one hand, and Plaintiffs and the Class members, on the other hand, engaged in "transactions" as the CLRA defines that term because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, the Product to Plaintiffs and the Class members.

81.     Defendant's actions, representations, and conduct violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

82.     Under section 1770 of the CLRA:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> \*  \*  \*  \*  \*
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> \*  \*  \*  \*  \*
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> \*  \*  \*  \*  \*
>
> (9) Advertising goods or services with intent not to sell them as advertised.

\* \* \* \* \*

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

*Id.* § 1770.

83.     As alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(5) by representing the Product has characteristics, uses, benefits, and qualities which they do not. Specifically, Defendant represents the Product is "natural," when, in fact, the Product contains synthetic ingredients.

84.     Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(7) by representing the Product is of a particular quality when they are of another. Specifically, Defendant represents that the Product is "natural," when, in fact, the Product contains synthetic ingredients.

85.     Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(9) by advertising the Product is "natural" with the intent to sell Product that is not actually for "natural."

86.     Finally, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(16) by representing that the Product it sold Plaintiffs and the Class members is "natural," when, in fact, the Product is not.

87.     Defendant violates the CLRA by representing through its marketing that the Product is "natural," as described above, when it knows, or should know, that the representations are unsubstantiated, false, and misleading.

25

88.     Plaintiffs and the Class members believe Defendant's representations that the Product is "natural." Plaintiffs and the Class members would not purchase the Product, but for Defendant's misleading statements about the Product being "natural."

89.     Plaintiffs and the Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Product as "natural." Plaintiffs and the Class members pay for a "natural" Product but do not receive such a Product because the Product contains synthetic ingredients.

90.     On information and belief, Defendant's actions were willful, wanton, and fraudulent.

91.     On information and belief, officers, directors, or managing agents at Defendant authorized the use of the misleading statements about the Product.

92.     CLRA SECTION 1782 NOTICE. On February 28, 2017, Plaintiff, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiffs would file a complaint seeking damages in accordance with the CLRA. Defendant failed to comply with the letter. For the foregoing reasons, pursuant to Civil Code section 1780(a)(3), Plaintiff, individually and on behalf of all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

93.     Pursuant to Civil Code sections 1780 and 1782, Plaintiffs and the Class members

26

seek damages in an amount to be proven at trial, an injunction to bar Defendant from continuing

their deceptive advertising practices, and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### California Bus. & Prof. Code § 17500 *et seq.*
### (On Behalf of Plaintiffs and California Subclass)

94.     Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

95.     Plaintiffs bring this claim for violation of the False Advertising Law, BUS. & PROF.

CODE § 17500 *et seq.* ("FAL"), on behalf of the Class.

96.     The FAL makes it unlawful for a person, firm, corporation, or association to induce

the public to buy its products by knowingly disseminating untrue or misleading statements about

the Product.

97.     At all relevant times, Defendant engaged, and continues to engage, in a public

advertising and marketing campaign representing that the Product is "natural."

98.     The Product, in fact, contains synthetic ingredients. Defendant's advertisements

and marketing representations are, therefore, misleading, untrue, and likely to deceive reasonable

consumers.

99.     Defendant engaged in its advertising and marketing campaign with the intent to

directly induce consumers, including Plaintiffs and the Class members, to purchase the Product

based on false and misleading claims.

100.    In making and disseminating the statements alleged herein, Defendant knew or

should have known the statements were untrue or misleading.

27

101.    Plaintiffs and the Class members believed Defendant's representations that the Product is "natural." Plaintiffs and the Class members would not purchase the Product if they knew the Product contained synthetic ingredients.

102.    Plaintiffs and the Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Product as "natural." Plaintiffs and the Class members pay for a Product that is "natural," but do not receive such a Product.

103.    The Product Plaintiffs and the Class members receive is worth less than the Product for which they pay. Plaintiffs and the Class members pay a premium price on account of Defendant's misrepresentations that the Product is "natural."

104.    Plaintiffs and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues or profits, injunctive relief enjoining Defendant from continuing to disseminate its untrue and misleading statements, and other relief allowable under Business and Professions Code section 17535.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**California Bus. & Prof. Code § 17200** *et seq.*
**(On Behalf of Plaintiffs and California Subclass)**

105.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

106.    Plaintiffs bring this claim for violation of the Unfair Competition Law, BUS. & PROF. CODE § 17200 *et seq.* ("UCL"), on behalf of the Class.

107.    The circumstances giving rise to Plaintiff's and the Class members' allegations include Defendant's corporate policies regarding the sale and marketing of the Product.

108.     Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. BUS. & PROF. CODE § 17200.

109.     By engaging in the acts and practices described herein, Defendant commits one or more acts of "unfair competition" as the UCL defines the term.

110.     Defendant committed, and continues to commit, "unlawful" business acts or practices by, among other things, violating GBL §§ 349 and 350, the CLRA, the FAL, multiple states' consumer protection laws, and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, as well as breaching multiple states' express warranty laws, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose as described herein.

111.     Defendant committed, and continues to commit, "unfair" business acts or practices by, among other things:

      a.  Engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the members of the Class;

      b.  Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and

      c.  Engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

112.     Defendant committed, and continues to commit, "fraudulent" business acts or practices because, as alleged above, Defendant's representations concerning the Product was false

and misleading, and Plaintiffs and the Class members relied on those representations in purchasing the Product.

113.    Defendant commits unlawful, unfair, and fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers, including Plaintiffs and the Class members.

114.    As detailed above, Defendant's unlawful, unfair, and fraudulent practices include making false and misleading representations that the Product is "natural."

115.    Plaintiffs and the Class members believed Defendant's representations that the Product is "natural." Plaintiffs and the Class members would not purchase the Product, but for Defendant's misleading statements that the Product is "natural."

116.    Plaintiffs and the Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Product as "natural." Plaintiffs and the Class members pay for a Product that is "natural," but do not receive a Product that is "natural." Instead, Plaintiffs and the Class members receive a Product that contains synthetic ingredients.

117.    Plaintiffs and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and profits, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendant from continuing to engage in its unfair, unlawful, and fraudulent conduct alleged herein.

## SIXTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiffs and All Class Members)

118.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

119.    Plaintiffs and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

120.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.    **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.    **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.    **California:**  Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

31

e.  **Colorado**:  Defendant's practices were and are in violation of Colorado's
Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.  **Connecticut:**  Defendant's practices were and are in violation of Connecticut's
Gen. Stat. § 42-110a, *et seq.*

g.  **Delaware:**  Defendant's practices were and are in violation of Delaware's
Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive
Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.  **District of Columbia:**  Defendant's practices were and are in violation of the
District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.  **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive
and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.  **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform
Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev.
Stat. § 480-2.

k.  **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer
Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.  **Illinois:**  Defendant's acts and practices were and are in violation of Illinois'
Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.
505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.  **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive
Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer

Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.   **Kentucky:**  Defendant's practices were and are in violation of Kentucky's

Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maine:**  Defendant's practices were and are in violation of the Maine Unfair

Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me.

Rev. Stat. Ann. § 1101, *et seq*.

q.   **Maryland:**  Defendant's practices were and are in violation of Maryland's

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and

practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen.

Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's

Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the

Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's

Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

33

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.   **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.   **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.   **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

34

dd. **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee. **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff. **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

gg. **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:**  Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq*.

mm. **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq*.

*nn.* **Wisconsin:**  Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq*.

oo. **Wyoming:**  Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq*.

121.    Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product is "Natural."

122.    Contrary to Defendant's representations, the Product is not "Natural."

123.    Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

124.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

125.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Product.

126.    As a result of Defendant's violations, Defendant has been unjustly enriched.

127.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive

and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**SEVENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and All Class Members)**

128.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

129.    Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "Natural."

130.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

131.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

132.    Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

133.    Within a reasonable time after she knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

134.    Defendant breached the express warranty because the Product is not "Natural" because it contains synthetic ingredients.

37

135.    Defendant thereby breached the following state warranty laws:

      a.      Code of Ala. § 7-2-313;

      b.      Alaska Stat. § 45.02.313;

      c.      A.R.S. § 47-2313;

      d.      A.C.A. § 4-2-313;

      e.      Cal. Comm. Code § 2313;

      f.      Colo. Rev. Stat. § 4-2-313;

      g.      Conn. Gen. Stat. § 42a-2-313;

      h.      6 Del. C. § 2-313;

      i.      D.C. Code § 28:2-313;

      j.      Fla. Stat. § 672.313;

      k.      O.C.G.A. § 11-2-313;

      l.      H.R.S. § 490:2-313;

      m.      Idaho Code § 28-2-313;

      n.      810 I.L.C.S. 5/2-313;

      o.      Ind. Code § 26-1-2-313;

      p.      Iowa Code § 554.2313;

      q.      K.S.A. § 84-2-313;

      r.      K.R.S. § 355.2-313;

      s.      11 M.R.S. § 2-313;

      t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

136.    As a direct and proximate result of Defendant's breach of express warranty,

Plaintiffs and Class Members were damaged in the amount of the price they paid for the Product,

in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS
### WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*
### (On Behalf of Plaintiffs and All Class Members)

137.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

138.    Plaintiffs bring this claim individually and on behalf of all members of the Class.

Upon certification, the Class will consist of more than 100 named Plaintiffs.

139.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who

have been damaged by the failure of a supplier or warrantor to comply with any obligation under

a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

140.     The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

141.     Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

142.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

143.     Defendant represented in writing that the Product is "Natural."

144.     These statements were made in connection with the sale of the Product and relate to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

145.     As alleged herein, Defendant breached the written warranty by selling consumers a Product that is not "Natural".

146.     Plaintiffs have purchased more than $25 worth of the Product within the Class Period.

147.     Packages of the Products can cost more than $5.

148.     The Product does not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiffs and

41

the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiffs and All Class Members)

149.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

150.    Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed product.

151.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiffs and Class Members that the Product is "Natural."

152.    Defendant breached the implied warranty of merchantability in that Defendant's Product's ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Product if they knew that it actually contained synthetic ingredients, that are not "Natural."

153.    Within a reasonable amount of time after the Plaintiffs discovered that the Product contains synthetic ingredients, Plaintiffs notified the Defendant of such breach.

154.    The inability of the Defendant's Product to meet the label description was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Product to the public.

155.    As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

## TENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (On Behalf of Plaintiffs and All Class Members)

156.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

157.    Defendant knew or had reason to know that the Plaintiffs and other Class Members were buying its Product with the specific purpose of buying products that contained exclusively natural ingredients.

158.    Plaintiffs and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting its Product to fit their specific intended use.

159.    Defendant held itself out as having particular knowledge of the Defendant's Product's ingredients.

160.    Plaintiffs' and Class Members' reliance on Defendant in selecting Defendant's Product to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Product's ingredients.

161.    Plaintiffs and the other Class Members' reliance on Defendant in selecting Defendant's Product to fit their particular use was reasonable given Defendant's particular knowledge of the Product it manufactures and distributes.

162.    As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

44

Dated: July 7, 2017

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiffs and the Class*

**HALUNEN LAW**
Melissa W. Wolchansky *(pro hac vice forthcoming)*
1650 IDS Center
80 South Eight Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
*Wolchansky@halunenlaw.com*
*Boyle@halunenlaw.com*

*Counsel for Plaintiffs and the Class*

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter, Esq.
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone⊘619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

*Counsel for Plaintiffs and the Class*

45