## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

HEIDI ARREOLA, TIM DOSTAL, and
JOSEPH MATTOCKS, individually on
behalf of themselves and all others similarly
situated,

     *Plaintiffs,*

v.

Kimberly-Clark Corporation,
     *Defendant.*

Case No. 7:17-cv-05127-CS-JCM

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED COMPLAINT

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Adam Gonnelli, Esq.
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
*sultzerj@thesultzerlawgroup.com*

Melissa S. Weiner, Esq.
**HALUNEN LAW**
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
*weiner@halunenlaw.com*

Michael R. Reese, Esq.
George V. Granade, Esq.
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone (212) 643-0500
*mreese@reesellp.com*
*ggranade@reesellp.com*

Edwin J. Kilpena, Jr., Esq.
**CARLSON LYNCH SWEET
KILPENA & CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
*ekilpena@carlsonlynch.com*

*Attorneys for Plaintiffs and the Proposed Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD .......................................................................................... 3

IV.     ARGUMENT ....................................................................................................... 3

        A.      The Court Should Deny Defendant's Motion to Dismiss Plaintiffs'
                Consumer Protection Claims .................................................................... 3

                1.      Reasonable Consumers Are Deceived by Defendant's Statements ........... 3

                2.      The Consolidated Complaint Satisfies the Pleading Requirements ........... 8

        B.      Plaintiffs Sufficiently Placed Defendant on Notice of This Lawsuit .................... 12

        C.      The Court Should Deny Defendant's Motion to Dismiss Plaintiff's
                Magnuson-Moss Warranty Act Claim ................................................................ 13

        D.      The Court Should Deny Defendant's Motion to Dismiss Plaintiffs' Breach
                of Express Warranty Claims .............................................................................. 16

        E.      The Court Should Deny Defendant's Motion to Dismiss Plaintiffs'
                California Implied Warranty Claims .................................................................. 16

        F.      Plaintiff's Unjust Enrichment Claim Is Well-Pled and Is Not Duplicative
                of the Other Causes of Action ........................................................................... 17

        G.      Plaintiffs Have Standing to Pursue Their Claims ............................................... 18

                1.      Plaintiffs Have Individual Standing to Pursue Injunctive Relief ............. 18

                2.      Whether Plaintiffs Can Represent Out of State Residents Is an
                        Issue for Class Certification, not a Standing Issue on a Motion to
                        Dismiss ..................................................................................................... 20

        H.      The Court Should Deny Defendant's Motion to Stay ........................................... 22

                1.      The FDA has Expressed No Interest in Defining "Natural" as
                        Applied to Cosmetics ............................................................................... 22

                2.      The Cases Defendant Cites are Distinguishable ..................................... 24

V.      CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

## CASES

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 JG RML,
    2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ..................................................... 8, 18

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML,
    2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 18, 2013) ................................................... 9, 19

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................................ 22

*Astiana v. Hain Celestial Grp., Inc.*, Case No. 11-cv-6342-PJH,
    2015 U.S. Dist. LEXIS 138496 (N.D. Cal. Oct. 9, 2015)...................................................... 24

*Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC),
    2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) ...................................................... 15

*Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*,
    36 F. Supp. 3d 417 (S.D.N.Y. 2014)...................................................................................... 21

*Belfiore v. Procter & Gamble Co.*,
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) ..................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................ 3

*Brady v. Basic Research, L.L.C.*,
    101 F. Supp. 3d 217 (E.D.N.Y. 2015) ................................................................................... 15

*Brenner v. Proctor & Gamble Co.*, Case No. 16-cv-1093-JLC (JCGx),
    2016 U.S. Dist. LEXIS 187303 (C.D. Ca. Oct. 20, 2016)..................................................... 25

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. N.Y. 2004)......................................................................................... 17

*Chaluisan v. Simsmetal E. LLC*,
    698 F. Supp. 2d 397 (S.D.N.Y. 2010).................................................................................... 17

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ............................................................................................... 17

*Cliffstar Corp. v. Elmar Indus., Inc.*,
    254 A.D.2d 723 (N.Y. App. Div. 1998) ................................................................................ 12

*Cohen v. JP Morgan Chase & Co.*,
    498 F.3d 111 (2d Cir. 2007)..................................................................................................... 4

*Computer Strategies, Inc. v. Commodore Business Machines, Inc.*,
   105 A.D.2d 167 (N.Y. App. Div. 1984) ................................................................. 12

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) ............................................................... 18, 19

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*,
   532 F.2d 957 (5th Cir. 1976) ................................................................. 13

*Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR),
   2013 U.S. Dist. LEXIS 107224 (S.D.N.Y. July 26, 2013) ...................................... 14

*Ellen v. Heacock*,
   247 A.D. 476 (N.Y. App. Div. 1936) .......................................................... 16

*Fagan v. Neutrogena Corp.*, Case No. 5:13-cv-01316-SVW-OP,
   2014 U.S. Dist. LEXIS 2795 (C.D. Ca. Jan. 8, 2014) ......................................... 25

*Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC,
   2017 U.S. Dist. LEXIS (N.D. Cal. Oct. 23, 2017) ........................................ 6, 25

*Gerstle v. Am. Honda Motor Co.*, No. 16-CV-04384-JST,
   2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017) ...................................... 17

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
   145 Cal. Rptr. 448 (Ct. App. 1978) ......................................................... 17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................. 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................... passim

*Goya Foods, Inc. v. Tropicana Prods.*,
   846 F.2d 848 (2d Cir. 1988) ................................................................. 22

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir. 1994) ................................................................... 17

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ......................................................... 4

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ........................................................ 18

*In re ConAgra Foods, Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................... 10, 11, 12

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM),
    2013 U.S. Dist LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)................................................ passim

*In re Natural Gas Commodity Litig.*,
    358 F. Supp. 2d 336 (S.D.N.Y. 2005) ....................................................................... 12

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013) ........................................................................................ 3

*Kaatz v. Hyland's Inc.*, No. 16 CV 237 (VB),
    2016 U.S. Dist. LEXIS 87348 (S.D.N.Y. July 5, 2016) ......................................... 14

*Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK),
    2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 12, 2016) ...................................... 8

*Keiler v. Harlequin Enters., Ltd.*,
    751 F.3d 64 (2d Cir. 2014) ........................................................................................ 3

*Langan v. Johnson & Johnson Consumer Cos.*,
    95 F. Supp. 3d 284 (D. Conn. 2015) ...................................................................... 25

*Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 JAM,
    2017 U.S. Dist. LEXIS 35703 (D. Conn. Mar. 13, 2017) ................................. 5, 25

*Martinez v. Capital One Bank, N.A.*, No. 10-cv-8028 RJS,
    2015 U.S. Dist. LEXIS 91417 (S.D.N.Y. July 13, 2015) ..................................... 21

*Merritt v. Shuttle, Inc.*,
    245 F.3d 182 (2d Cir. 2001)....................................................................................... 6

*Michael v. Honest Co.*, No. LA CV15-07059,
    2016 U.S. Dist. LEXIS 189116 (C.D. Cal. Dec. 6, 2016) .................................... 17

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) ................................................................................. 20

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)............................................................................... 20, 21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ......................................................................................... 9, 11

*Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG)(RML),
    2015 U.S. Dist. LEXIS 108165 (E.D.N.Y. Aug. 17, 2015).................................. 6, 7

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)...................................................................................... 9

*Quinn v. Walgreen Co.*,
　958 F. Supp. 2d 533 (S.D.N.Y. 2013)...................................................................................... 4

*Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277,
　2016 U.S. Dist. LEXIS 14001 (N.D.N.Y. Jan. 15, 2016)....................................................... 21

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*,
　775 F.3d 154 (2d Cir. 2014)........................................................................................... 20, 21

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*,
　163 F. Supp. 3d 109 (S.D.N.Y. 2016).................................................................................... 9

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG,
　2006 U.S. Dist. LEXIS 61872 (E.D.N.Y. Aug 30, 2006)....................................................... 14

*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML,
　2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015).................................................... 5

*Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 MKB,
　2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. 2016)........................................................... passim

*Steel Co. v. Citizens for a Better Env't*,
　523 U.S. 83 (1998)............................................................................................................ 20

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB),
　2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015).................................................... 9

*Tsirelman v. Daines*,
　794 F.3d 310 (2d Cir. 2015)............................................................................................... 3

*U.S. v. Empire Educ. Corp.*,
　959 F. Supp. 2d 248 (N.D.N.Y. 2013).................................................................................. 3

*Ultimax, Inc. v. Mercedes-Benz USA, LLC*, No. 2:06-CV-951,
　2008 U.S. Dist. LEXIS 28475 (S.D. Ohio Apr. 8, 2008) ...................................................... 14

*United States v. Wells Fargo Bank, N.A.*,
　972 F. Supp. 2d 593 (S.D.N.Y. 2013).................................................................................. 10

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 9

*Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH,
　2012 U.S. Dist. LEXIS 59408 (N.D. Cal. Apr. 27, 2012) ................................................ 15, 16

*Williams v. Gerber Prods. Co.*,
　552 F.3d 934 (9th Cir. 2008) ........................................................................................... 4, 8

## STATUTES

15 U.S.C. § 2052 ...................................................................................................... 14

15 U.S.C. § 2301 ...................................................................................................... 14

15 U.S.C. § 2311 ...................................................................................................... 14

California's Consumers Legal Remedies Act,
    CAL. CIV. CODE § 1750 *et seq.* ........................................................................... 9

California's Unfair Competition Law,
    CAL. BUS. & PROF. CODE § 17200 *et seq.* .......................................................... 9

Consumer Product Safety Act,
    15 U.S.C. § 2051 *et seq.* .................................................................................... 14

Federal Seed Act,
    7 U.S.C. § 1551 *et seq.* ..................................................................................... 14

Food, Drug, and Cosmetic Act,
    21 U.S.C. § 301 *et seq.* ..................................................................................... 13

Magnuson-Moss Warranty Act,
    15 U.S.C. § 2301 *et seq.* ........................................................................ 13, 14, 15

N.Y. U.C.C. LAW § 2-313 ....................................................................................... 12

N.Y. GEN. BUS. LAW § 349 .............................................................................. 8, 9, 11

## OTHER AUTHORITIES

Could the FDA be Dismantled Under Trump? STAT ................................................ 23

Federal Rule of Civil Procedure 8 ............................................................... 8, 9, 17

Federal Rule of Civil Procedure 9 ....................................................................... passim

Federal Rule of Civil Procedure 12 ............................................................................ 3

How Donald Trump May Impact the FDA, Forbes .................................................. 23

President Trump Works to Make Drugs More Affordable, Create Jobs, The White House,
    Office of the Press Secretary ................................................................................ 23

Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs,
    The White House, Office of Press Secretary ........................................................ 23

Small Businesses & Homemade Cosmetics: Fact Sheet, U.S. FDA,
    https://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm ....................... 22

Trump Tells Drugmakers He'll Tackle Prices, Politico................................................................. 23

U.S. Const. art. III ........................................................................................................... 19, 20, 21

Plaintiffs respectfully submit the following in opposition to the motion to dismiss the Consolidated Complaint, ECF No. 39, filed by Defendant Kimberly-Clark Corporation.

## I.    INTRODUCTION

This consumer protection action was compelled by Defendant's deceptive and misleading business practices with respect to the marketing and sale of Scott Naturals Flushable Cleansing Cloths (the "Products"). Specifically, Defendant markets and sells the Products by prominently describing them as "Naturals." Plaintiffs and the Class Members gave that representation its most reasonable interpretation: that the Products were made from natural ingredients, and not synthetics. Notwithstanding this representation, the Products actually contain a long list of synthetic, chemical ingredients.

Defendant's main argument in support of its motion to dismiss is that the term "Naturals" merely represents that the Products are environmentally sustainable, and not that they contain natural ingredients. Mem. Supp. Mot. Dismiss Pls.' Consolidated Compl. 7-16 ("Def. Br."). The crux of this argument is that consumers cannot rely on their straightforward interpretation of a representation that is emblazoned in large print on the front label of the Products, but rather must search smaller font on the back and side labels for the true meaning of the term "Naturals." This argument has been firmly rejected within this Circuit and throughout the country. Moreover, even if consumers were required to engage in this fact-finding expedition, which they are not, the language relied upon by Defendant does nothing to disclaim the reasonable interpretation of the prominent front-label representation that the Products are from natural ingredients, and not synthetic ones.

As set forth in detail below, Defendant's remaining arguments have either been explicitly rejected by courts in this Circuit or are premised on a fundamental misunderstanding of the

applicable law. Accordingly, Defendant's motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in everyday household products. ¶ 5.[1] Consumers reasonably believe these products are safer than alternative, unnatural products. *Id.* Companies, like Defendant, have capitalized on these desires and beliefs, and the willingness of consumers to purchase "natural" products instead of products containing synthetic ingredients. *Id.*

The Products at issue in this case are Scott Naturals Flushable Cleansing Cloths, which Defendant prominently labels as being "Naturals." ¶ 6. This representation is false and misleading because the Products contains multiple synthetic ingredients such as lauryl glucoside, sodium benzoate, polysorbate-20, sorbic acid, and phenoxyethanol. ¶ 7.

Plaintiffs purchased the Products because they viewed the "Naturals" label and reasonably believed the Products did not contain non-natural, synthetic ingredients. ¶ 34. Indeed, it is reasonable to believe products labeled as "Naturals" would not contain synthetic ingredients formulated or manufactured by a chemical process or a process that chemically changes a substance extracted from a natural source. ¶¶ 12-15. Plaintiffs and the Class Members were harmed, suffered injury in fact, lost money, and were denied the benefit of their purchases because they paid for "Naturals" Products, but received Products with non-natural, synthetic ingredients. ¶ 27. Had Plaintiffs and the Class Members not been deceived, they would not have purchased the Products, or they would have paid less money for them. ¶ 24.

While Defendant lists the Products' ingredients on the back label, the label does not

---

[1] All "¶ __" are references to paragraphs in the Consolidated Class Action Complaint, ECF No. 39 ("Consolidated Complaint," "Complaint," or "Compl.").

differentiate between natural and synthetic ingredients. ¶ 13. For any consumer to understand that the ingredients listed on the back label are synthetic, he or she would require a level of scientific investigation and knowledge far beyond that of the average consumer. *Id.* Furthermore, reasonable consumers are not expected or required to scour ingredients listed on the back of a product label to confirm or debunk prominent claims made on a product's front label. ¶ 14.

## III. LEGAL STANDARD

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014). In deciding a motion to dismiss, courts must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). When alleging fraud, Rule 9(b) requires pleadings to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The allegations must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *U.S. v. Empire Educ. Corp.*, 959 F. Supp. 2d 248, 253 (N.D.N.Y. 2013).

## IV. ARGUMENT

### A. The Court Should Deny Defendant's Motion to Dismiss Plaintiffs' Consumer Protection Claims

#### 1. Reasonable Consumers Are Deceived by Defendant's Statements

In the context of deceptive advertising claims, the Second Circuit uses the fact-sensitive,

reasonable consumer standard, i.e., is the alleged act "likely to mislead a reasonable consumer acting reasonably under the circumstances"? *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). The same standards exist for the California consumer protection claims in this action. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).

Notwithstanding the unambiguous statement on all of the Products' labels, Defendant argues that its "natural" labeling does not mean what it says. Courts have repeatedly rejected the premise of Defendant's argument, i.e., that a court can and should second guess a consumer's interpretation of the term "natural" and rule, as a matter of law on a motion to dismiss, that the term means something else. *See, e.g.*, *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) (denying motion to dismiss); *Goldemberg*, 8 F. Supp. 3d at 478-80 (what reasonable consumer believes and how reasonable consumer acts cannot be resolved on a motion to dismiss, as they are factual disputes); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("[W]hether a particular act or practice is deceptive is usually a question of fact."). In this case, Plaintiffs' Consolidated Complaint plausibly alleges that a reasonable consumer would be misled by Defendant's deceptive representations.

Despite Plaintiffs' well-pled allegations, Defendant argues that its labeling cannot, as a matter of law, deceive reasonable consumers into believing that the Products contain exclusively natural ingredients. Def. Br. 9-14. This argument, however, is contrary to the case law in this Circuit (and throughout the country), which holds that a court cannot, as a matter of law, say that no reasonable consumers may interpret the term "natural" to mean that all of the ingredients in a product are natural. *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 MKB, 2016 U.S. Dist. LEXIS 131564, at *40-44 (E.D.N.Y. 2016) (denying motion to dismiss because reasonable

consumers could interpret the phrases "Natural Whole Herb" and "Natural Menopausal Relief" to mean the products contain only natural ingredients); *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 RML, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015) (rejecting defendant's argument that, as a matter of law, no reasonable consumer could be misled by "Natural Brew"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 U.S. Dist LEXIS 123824, at *48-49 (E.D.N.Y. Aug. 29, 2013) ("*Frito Lay*") (holding that "what a reasonable consumer would believe the term 'natural' to mean cannot be resolved on [a] motion [to dismiss]" as it is a "factual dispute"); *see also Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 JAM, 2017 U.S. Dist. LEXIS 35703, at *25 (D. Conn. Mar. 13, 2017) (holding that bath wash and shampoo labeled as containing a "Natural Oat Formula," but which actually contained synthetic chemicals, was deceptive because "reasonable consumers could interpret the term 'Natural Oat Formula' to imply that the entire product was natural").

Furthermore, the fact that the Products' labeling does not explicitly state that the Products are "all natural" or "100% natural" is irrelevant. *Goldemberg* is on point. There, the plaintiff alleged the trademarked term "Active Naturals" was deceptive because it conveyed to consumers that the product was "completely natural," yet the products at issue contained synthetic ingredients. *Goldemberg*, 8 F. Supp. 3d at 478. The defendant argued the plain language of the phrase "Active Naturals" conveys to consumers only that the products contain some natural ingredients—not that they are "100% Natural" and contain no synthetic ingredients. *Id.* The court rejected defendant's argument and declared "[we] cannot find as a matter of law that no reasonable consumer could be misled by these advertisements into believing the products contain exclusively natural ingredients."[2] *Id*. at 480. *Gasser v. Kiss My Face, LLC*, upon which Defendant relies (Def. Br. 13),

---

[2] Similarly, Defendant fails to distinguish the FTC actions Plaintiffs cite in the Complaint, as there

is not to the contrary. In *Gasser*, the court held, among other things, that the statements "nourish naturally with our botanical blends" and "obsessively natural kids" on the labeling of cosmetic products were not likely to deceive a reasonable consumer into believing the products contained no synthetic ingredients. *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 U.S. Dist. LEXIS 175273, at *1, *14-15 (N.D. Cal. Oct. 23, 2017). With respect to "nourish naturally with our botanical blends," the court stated that it was "unaware of any case which has held that use of the adverb 'naturally' is sufficient itself to deceive a reasonable consumer." *Id.* at *14-15. "Naturals," by contrast, is a noun, not an adverb, and courts have denied motions to dismiss where plaintiffs alleged the use of the term was misleading. *E.g.*, *Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG)(RML), 2015 U.S. Dist. LEXIS 108165, at *11 (E.D.N.Y. Aug. 17, 2015) ("Suave Naturals"); *Goldemberg*, 8 F. Supp. 3d at 480. And with respect to "obsessively natural kids," the court found that the word "natural" modified the word "kids," pointing out that the word "KIDS" was displayed in all capitals and in larger font; thus, the marketing targeted parents who considered their kids "natural" and did not indicate the product itself would contain no synthetic ingredients. *Gasser*, 2017 U.S. Dist. LEXIS 175273, at *14-15. Here, by contrast, the word "Naturals" is in large font and does not modify any other word.

Defendant's argument that its Products do not make any false or deceptive representations when the "'crucial' context" is considered is unavailing. Def. Br. 10. First and foremost, a motion to dismiss must be decided on the facts as alleged in the complaint. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir. 2001). However, even if the other portions of the Product's labels that Defendant proffers are properly part of the record, there is no basis for the Court to hold that, as a

---

is no material difference between "Naturals" and "all natural" or "100% natural" in the context of the Products' labeling. *See* Def. Br. 13-14; *Goldemberg*, 8 F. Supp. 3d at 478-81.

matter of law, the additional images necessarily change reasonable consumers' understanding of the Products, especially when viewed in the light most favorable to Plaintiffs. *See, e.g.*, *Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at *53 (concluding that even though an explanatory ring of text stating "no MSG—no preservatives—no artificial flavors" surrounded the words "all natural," the court could not properly resolve on a motion to dismiss what a reasonable consumer would believe the phrase "all natural" means with respect to the presence of genetically modified organisms).

Nor is there any support for the proposition that the Court can rule *as a matter of law* that, *inter alia*, the on-label green band "evokes the universally recognized 'recycle' symbol" and so no reasonable consumer could be misled into thinking the Product itself is "natural." Far from being the only reasonable interpretation of the Product labeling, this interpretation necessitates a leap of logic. It requires consumers not only to recognize the leaf pattern as somehow reminiscent of the recycling symbol, but also to connect that symbol to the word "Naturals" and to then draw the inference that the term "Naturals" refers exclusively to environmental friendliness. Indeed, the on-label imagery and "context" only bolster plaintiff's claims. *See Paulino*, 2015 U.S. Dist. LEXIS 108165, at *11 (denying motion to dismiss and explaining that "in addition to representations on the front labels that the Products were 'Naturals,' the plaintiffs point to other aspects of the labeling that would further lead a reasonable consumer to believe she was purchasing natural products. For instance . . . statements are accompanied by images of natural scenery or objects.").

Moreover, the fact that synthetic ingredients are listed on the packaging does not cure the "natural" misrepresentation. Plaintiffs allege that despite synthetic ingredients being listed "on the back of the Product's packaging in the ingredients listed, the reasonable consumer would not understand—nor are they expected to understand—that these ingredients are synthetic." ¶ 13. And, courts have rejected Defendant's argument that synthetic ingredients on a product's back label can

rectify misleading "natural" labeling. *See, e.g.*, *Goldemberg*, 8 F. Supp. at 479 (holding that where defendant's trademark and advertising "exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the products' back label did not, as a matter of law, preclude a reasonable consumer from being misled). In other words, Defendant's fine print on the labels does not explain that many of the ingredients in the Products are synthetic, or attempt to distinguish the natural ingredients from the synthetic ones. Furthermore, courts in this Circuit have held that consumers are not expected to look beyond misleading labeling in search of the true meaning of a defendant's representations. *Ackerman v. Coca-Cola Co.*, No. cv-09-0395 (JG) (RML) 2010 U.S. Dist. LEXIS 73156 at * 62 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." (quoting *Williams*, 552 F.3d at 939-40)).

Finally, contrary to Defendant's arguments, Plaintiffs do not "attempt to invoke food safety regulations." Def. Br. 14. Rather, Plaintiffs have noted that "[t]o assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance." ¶ 8. Plaintiffs have cited to the United States Department of Agriculture's Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural) as evidence regarding how consumers perceive the term "natural." Compl. Ex. A.

### 2.      The Consolidated Complaint Satisfies the Pleading Requirements

There is no basis to Defendant's contention that Rule 9(b) is the applicable pleading standard. Rather, Plaintiff's claims need only meet the "bare-bones" pleadings requirements of Rule 8(a). *Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 12, 2016) ("At the motion to dismiss stage, 'an action under § 349 is not

subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005))); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 U.S. Dist. LEXIS 184232, at *68 (E.D.N.Y. July 18, 2013) ("*Ackerman II*") (noting that claims under California consumer protection laws do not include fraud as an element, and therefore generally do not need to be pled with particularity, but nonetheless finding that Plaintiff's claims satisfied Rule 9(b)).

To make out a prima facie case under NY GBL § 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 115 (S.D.N.Y. 2016). Moreover, Plaintiff is not required to establish intent to mislead or justifiable reliance to adequately plead a claim under section 349. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) ("*Oswego*"). The Consolidated Complaint alleges that Plaintiffs were exposed to Defendant's labeling and that Plaintiffs purchased Defendant's Products at a premium price as a result of the misleading "Naturals" representation. ¶ 3. These allegations are sufficient to allege that Defendant's actions were consumer oriented, materially misleading, and caused Plaintiffs' injury under Rule 8(a). *See Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 at *67 (E.D.N.Y. Sept. 22, 2015).

Even if Rule 9(b) were applicable to Plaintiff's claims under the UCL, FAL, and CLRA, the Consolidated Complaint meets the pleading requirements of Rule 9(b) by describing, in detail, the who, what, when, and where regarding Defendant's misleading statements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Consolidated Complaint sets forth facts with

9

sufficient specificity to give Defendant notice and enable it to prepare a responsive pleading. *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013). The Complaint states that Defendant (the "who") falsely represented the Products are natural when, in fact, they are not because they contain synthetic ingredients (the "what"), ¶ 3; that Plaintiffs and the Class Members purchased the Products during the applicable statute of limitations period (the "when"), ¶ 35; and that Plaintiffs relied on this representation, which was placed prominently on the Products' packaging (the "where"), ¶¶ 6, 35.

Courts have held that similar allegations satisfied Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Frito Lay*, 2013 U.S. Dist. LEXIS 123824; *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) ("*ConAgra*"). In *Frito Lay*, the court held that the plaintiffs satisfied Rule 9(b) because they "allege[d] that defendants PepsiCo and Frito-Lay (the 'who') falsely stated that the products are 'All Natural,' but in fact, are not . . . (the 'what')," and further alleged "[w]hen the defendants labeled, and the plaintiffs purchased, the products between January 1, 2010 and the present (the 'when'), the plaintiffs relied on this representation, which was placed prominently on the products' packaging (the 'where')." *Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at *73. The same level of detail is provided in Plaintiffs' allegations here.

Despite Defendant's contentions to the contrary, Plaintiffs are not required to plead precisely when and where they purchased the Products. Plaintiffs Dostal and Arreola adequately pled both elements by stating they purchased the Products in New York and California, respectively, ¶¶ 31, 32, and that they purchased the Products during the Class Period (the statute of limitations period). *See* ¶¶ 4, 35 (defining the Class Period as the applicable statute of limitations period and defining the Class as all consumers who purchased the Products during the Class Period); *Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at *75 (holding that Rule 9(b) did not require

plaintiffs to identify the specific store at which they purchased the product); *ConAgra*, 908 F. Supp. 2d at 1099 (holding that the "when" element was satisfied where the complaint alleged the products were purchased during the class period). Plaintiff Arreola's allegations go even further, identifying the specific year and store in which she purchased the Products. ¶ 32. Defendant also does not point to any case holding that plaintiffs must allege specifically how much they paid for products, and courts in this Circuit have specifically held that such an allegation is not required. *Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at \*75 ("[T]he Court finds no reason to require [pleading the price paid for the product]—it is not the who, what, where, when, or how of the claim.").

In fact, Plaintiffs' Consolidated Complaint provides even greater detail than is necessary under Rule 9(b). First, the Complaint explains the "where" by providing pictures of the deceptive labeling on each of the Products. *See Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at \*74 (finding that plaintiff's consumer protection claims were pled with even greater particularity than required by 9(b) when they provided pictures of the defendant's labeling). The Complaint also provides additional detail regarding the "what" by listing each of the synthetic ingredients contained in the Product and explaining why each of those ingredients is not natural based on definitions provided by the USDA and Congress. ¶¶ 7-10; *see also Frito Lay*, 2013 U.S. Dist. LEXIS 123824, at \*73; *ConAgra*, 908 F. Supp. 2d at 1100.

Faced with these detailed and well-pled allegations, Defendant attacks the Consolidated Complaint based on syntax rather than content. Defendant contends the Complaint does not adequately plead the element of reliance. Def. Br. 7. As noted above, reliance is not an element of a claim under NY GBL § 349. *Oswego*, 85 N.Y.2d at 26. Additionally, the Complaint repeatedly describes Plaintiffs' reliance, stating "[h]ad Defendant not made the false, misleading, and deceptive representation that the product was 'Natural,' Plaintiffs would not have been willing to

11

pay the same amount for the Product, and, consequently, they would not have been willing to purchase the Product." ¶ 35; *see ConAgra*, 908 F. Supp. 2d at 1108 (holding plaintiffs adequately alleged reliance). To suggest the Complaint fails to allege that the Plaintiffs looked at the Product labeling requires an overly mechanical and willfully oblivious reading of the pleading. *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 342 (S.D.N.Y. 2005) (court must draw all reasonable inferences in favor of the plaintiff when reviewing the sufficiency of a complaint).

**B.      Plaintiffs Sufficiently Placed Defendant on Notice of This Lawsuit**

Defendant argues Plaintiffs' express warranty claim must be dismissed to the extent it arises under New York law because Plaintiff Dostal did not provide Defendant with pre-suit notice. Def. Br. 16. However, Plaintiffs, including Plaintiff Dostal, did provide sufficient notice that they were unsatisfied with their purchases of the Products. On February 28, 2017, prior to commencing the instant case, counsel for Plaintiffs sent Defendant a letter explaining that its "Naturals" labels are deceptive because the Products contain synthetics and its conduct violates the express warranty law of New York. In fact, Defendant's counsel filed a copy of the letter in connection with Defendant's motion to dismiss the original Class Action Complaint. *See* Decl. Loose, Ex. C., ECF No. 27-3 ("Pre-Suit Notice"). Attached to the Pre-Suit Notice letter is a copy of a draft complaint that specifically states that "Defendant breached the express warranty because the Product is not 'Natural' because it contains synthetic ingredients . . . [this violates] N.Y. U.C.C. Law § 2-313." Pre-Suit Notice at 34-35. The notice requirement only requires Plaintiffs to "alert [defendant] that the transaction [was] troublesome and [did] not need to include a claim for damages or threat of future litigation." *Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724 (N.Y. App. Div. 1998) (quoting *Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 176 (N.Y. App. Div. 1984)); *see also E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957,

976 (5th Cir. 1976) ("[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."). Thus, because Plaintiffs sent Defendant a letter specifically explaining their issues with the Products, thereby alerting it to the troublesome transactions, they have satisfied the notice requirement.

Defendant also argues Plaintiff Arreola has not satisfied the notice requirements of the CLRA. Def. Br. 16-17. However, the Consolidated Complaint specifically states that "Plaintiff Arreola, through counsel, sent a CLRA demand letter to Defendant." ¶ 91. Taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor—as required at the motion to dismiss stage—Plaintiffs have satisfied the notice provisions of the CLRA.[3]

### C.   The Court Should Deny Defendant's Motion to Dismiss Plaintiff's Magnuson-Moss Warranty Act Claim

Defendant's argument that the Magnuson-Moss Warranty Act ("MMWA") claim is barred by the Food, Drug, and Cosmetic Act ("FDCA") is misplaced and wrong. Defendant's argument is premised on the idea that the FDCA bars MMWA claims based on a representation or warranty that the manufacturer is required to make pursuant to the FDCA. Here, however, the FDCA does not require the "Naturals" labeling. Rather, that is something Defendant voluntarily chooses to place on the label. And, since the term "Naturals" is not governed by the FDCA, Plaintiffs' MMWA claim is not barred by the FDCA.

Moreover, if Congress intended the MMWA to exclude warranties made on cosmetic products from its purview, Congress would have stated so explicitly, as it did with respect to the

---

[3] Plaintiffs' counsel have reviewed their records, and the March 3, 2017, date of Plaintiff Arreola's letter in the Consolidated Complaint is an inadvertent drafting error; the date should be February 28, 2017, the date when Plaintiffs sent the Pre-Suit Notice. In any event, Defendant does not challenge the Complaint's allegation that Plaintiff Mattocks placed it on notice of its CLRA violation via a demand letter sent on May 5, 2017, which predates the filing of both this case and the *Mattocks* case in the Southern District of California.

Federal Seed Act. *See* 15 U.S.C. § 2311(a)(2). Or, it would have excluded it from the definition of "consumer product," as it did with the Consumer Product Safety Act. *Compare* 15 U.S.C. § 2052(a)(5)(H), *with* 15 U.S.C. § 2301(1). It would not exempt one of the most ubiquitous of all "consumer products"—a flushable wipe, which is basically a form of toilet paper—from the MMWA's purview without explicit reference, instead leaving such an intent to be extracted from a savings clause directed to other federal laws on "written warranties."

Defendant also argues "Naturals" cannot be subject to an MMWA suit because the statement is not a "'written affirmation' that a consumer product will be 'defect free or will meet a specified level of performance over a specified period of time.'" Def. Br. 17. This argument is misplaced for two reasons. First, it asks the Court to rule as a matter of law on what actually is an issue of fact for the jury—i.e., whether the presence of synthetics in the Products is a defect, thereby violating the warranty that the Products are "Naturals." *See, e.g.*, *Ultimax, Inc. v. Mercedes-Benz USA, LLC*, No. 2:06-CV-951, 2008 U.S. Dist. LEXIS 28475 at *23 (S.D. Ohio Apr. 8, 2008) (denying motion for summary judgment, holding "whether the Vehicle was warranted to be free of vibration is a question of fact"); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG, 2006 U.S. Dist. LEXIS 61872 at *21 (E.D.N.Y. Aug 30, 2006) (holding that what constituted "defect" under written warranty was question of fact). Second, "[t]he MMWA 'merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages.'" *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *55 (quoting *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 107224, at *10 n.2 (S.D.N.Y. July 26, 2013)); *see also Kaatz v. Hyland's Inc.*, No. 16 CV 237 (VB), 2016 U.S. Dist. LEXIS 87348, at *11 n.5 (S.D.N.Y. July 5, 2016) ("Although the MMWA is a federal statute, liability under it is based on state warranty laws"). "Therefore, '[Plaintiff's] breach of

express warranty and MMWA claims stand or fall together.'" *Sitt*, 2016 U.S. Dist. LEXIS 131564,

at *56 (quoting *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015)).

Under state law, a statement constitutes an express warranty if a reasonable consumer

would interpret the statement as a factual claim upon which he or she could rely. *Sitt*, 2016 U.S.

Dist. LEXIS 131564, at *51. Critical to the issue before the Court, "[w]hat a reasonable consumer's

interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for

decision on a motion to dismiss." *Id.* To this end, labeling products as "Naturals" can constitute an

actionable warranty under New York law. *Id.* at *54 (allowing breach of express warranty claim

to proceed based on "natural" representation on dietary supplements); *Paulino*, 2015 U.S. Dist.

LEXIS 108165, at *7; *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 U.S. Dist. LEXIS

67118, at *20 (S.D.N.Y. May 15, 2014); *Goldemberg*, 8 F. Supp. 3d at 483 (allowing breach of

express warranty claim to proceed based on "Active Naturals" labeling representation).

In *Sitt*, for example, the defendant argued an MMWA claim should be dismissed because

the "natural" representation on its dietary supplement was "merely [a] product description." *Sitt*,

2016 U.S. Dist. LEXIS 131564, at *56. The district court disagreed, holding:

> [B]ecause the Court cannot conclude that the Product could not mislead a reasonable
> consumer, the Court cannot conclude as a matter of law the Defendants'
> representations about the Product would not amount to a warranty that could induce
> a consumer to purchase the Product, and which is therefore actionable as an express
> warranty under either New York law or the MMWA.

*Id.* at *56-57. As the court held in *Sitt*, it is inappropriate at this juncture to rule that as a matter of

law that Defendant's representation about the Products would not amount to a warranty that could

induce a consumer to purchase the Products. *See also Vicuna v. Alexia Foods, Inc.*, No. C 11-6119

PJH, 2012 U.S. Dist. LEXIS 59408, at *5 (N.D. Cal. Apr. 27, 2012) (holding that under California

warranty law, "plaintiffs have adequately stated a claim that the designation 'All Natural'

constituted a description of the potato products, or a statement of fact about the potato products,

and that the warranty was breached by the inclusion of an ingredient that was arguably synthetic"). Accordingly, the Court should deny Defendant's request for dismissal of the MMWA claim.

### D. The Court Should Deny Defendant's Motion to Dismiss Plaintiffs' Breach of Express Warranty Claims

"To state a claim for breach of express warranty, a plaintiff must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Vicuna*, 2012 U.S. Dist. LEXIS 59408, at *5. Defendant challenges Plaintiffs' claims for breach of express warranty under California and New York law. The elements for breach of express warranty claims under both are materially the same. *Compare id.*, *with, e.g.*, *Ellen v. Heacock*, 247 A.D. 476, 477 (N.Y. App. Div. 1936) ("To constitute an 'express warranty,' [under New York law] two elements must be present: (1) There must be either an affirmation of fact or a promise by the seller relating to the subject of the sale, the natural tendency of which was to induce the purchaser to buy the goods: (2) the buyer must rely upon such statement or promise in making the purchase."). Here, Plaintiffs allege the "Naturals" representation on the Products constituted a description of the Products that was part of the basis of the bargain and that the warranty was breached by the inclusion of non-natural synthetics in the Products. This constitutes an express warranty under California and New York law. *E.g.*, *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *56.

### E. The Court Should Deny Defendant's Motion to Dismiss Plaintiffs' California Implied Warranty Claims

Defendant first argues Plaintiffs' implied warranty claims should be dismissed because "Plaintiffs fail to allege privity of contract between themselves and [Defendant]."[4] Def. Br. 19. However, Plaintiffs' claims fall squarely within two exceptions to the privity requirement. First,

---

[4] Plaintiffs do not contest dismissal of the New York implied warranty claims based on privity.

Plaintiffs need not allege privity to sustain their California implied warranty claims because they are intended third-party beneficiaries of the contracts between Defendant and the retailers from which they purchased the Products. *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Ct. App. 1978); *see also Michael v. Honest Co.*, No. LA CV15-07059, 2016 U.S. Dist. LEXIS 189116 (C.D. Cal. Dec. 6, 2016). Second, because Plaintiffs' claims are based on affirmative representations, upon which Plaintiffs relied in purchasing the Products, Plaintiffs' claims qualify for a separate exception that "arises when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *see also Gerstle v. Am. Honda Motor Co.*, No. 16-CV-04384-JST, 2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017). Accordingly, the Court should deny Defendant's motion to dismiss Plaintiffs' California implied warranty claims.

### F.   Plaintiff's Unjust Enrichment Claim Is Well-Pled and Is Not Duplicative of the Other Causes of Action

The basic elements of an unjust enrichment claim in New York, which are properly pled in the Consolidated Complaint, are that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. N.Y. 2004). Defendant does not dispute that Plaintiff has pled and factually supported these elements. Rather, Defendant argues Plaintiff's claim must be dismissed because it is duplicative.

As set forth in *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397 (S.D.N.Y. 2010), it is inappropriate at the motion to dismiss phase to issue a ruling as to whether an unjust enrichment claim is duplicative because that question may be answered through discovery. Under Rule 8(d)(2), "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994). Because Plaintiffs may

plead their unjust enrichment claims in the alternative to their other claims, and questions of fact remain as to all of Plaintiffs' claims, the Court should decline to dismiss Plaintiffs' unjust enrichment claim. Indeed, the Eastern District of New York sustained nearly identical unjust enrichment claims in *Ackerman*, 2010 U.S. Dist. LEXIS 73156, and in *In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) ("*In re Bayer*"), where it held:

> [P]laintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment.

*In re Bayer*, 701 F. Supp. 2d at 384. Here, a plain reading of the Consolidated Complaint reveals that each of the elements necessary to sustain an unjust enrichment action has been pled.

### G. Plaintiffs Have Standing to Pursue Their Claims

#### 1. Plaintiffs Have Individual Standing to Pursue Injunctive Relief

Defendant argues that Plaintiffs lack standing to pursue injunctive relief. Def. Br. 21-22. The Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), persuasively shows why Defendant is wrong. In *Davidson*, the plaintiff alleged the defendant had sold products using deceptive claims on the products' packaging. *Davidson*, 873 F.3d at 1107-08. The defendant moved to dismiss, arguing the plaintiff did not have standing to seek injunctive relief because she was apprised of the fraud when she filed her complaint and hence could no longer be injured based upon future conduct. The district court granted the defendant's motion.

The Ninth Circuit reversed the district court and held that the plaintiff ***did have standing to pursue injunctive relief***. *Davidson*, 873 F.3d at 1112-16. The Ninth Circuit explained:

> We hold that a previously deceived consumer may have standing to seek an

injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

\*   \*   \*   \*

Were injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, . . . consumer protection laws would be effectively gutted . . . [B]y finding that these plaintiffs fail to allege Article III standing for injunctive relief, we risk creating a "perpetual loop" of plaintiffs filing their state law consumer protection claims in . . . state court, defendants removing the case to federal court, and the federal court dismissing the injunctive relief claims for failure to meet Article III's standing requirements. On our Article III standing analysis, fully supported for the reasons we have explained by established standing principles, this "perpetual loop" will not occur.

*Id.* at 1115-16 (citations omitted). Recent decision from courts within the Second Circuit follow this same logic, holding that plaintiffs in consumer protection cases, such as that at issue here, have standing to pursue injunctive relief. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) ("*Goldemberg II*"); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); *Ackerman II*, 2013 U.S. Dist. LEXIS 184232, at \*57, n.23. Accordingly, Defendant's motion to dismiss Plaintiff's injunctive relief claims should be denied.[5]

---

[5] Even if Defendant were to remove the word "Naturals" from the packaging and labeling of the Product, that would be insufficient to moot Plaintiffs' claims for injunctive relief, as Plaintiffs could still seek an injunction that would, for example, prohibit future violations and/or require corrective advertising. To show mootness due to its voluntary compliance, Defendant would be required to bear the "'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 656 (S.D.N.Y. 2017); *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 661 (S.D.N.Y. 2013) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways."). Further, Defendant could not make such a showing in the absence of a developed factual record. *Reese v. Odwalla, Inc.*, No. 13-CV-00947-YGR, 2017 WL 565095, at \*6 (N.D. Cal. Feb. 13, 2017) (denying motion to dismiss claims for injunctive relief, as "further development of the factual record [was] necessary to determine the availability of injunctive relief").

### 2. Whether Plaintiffs Can Represent Out of State Residents Is an Issue for Class Certification, not a Standing Issue on a Motion to Dismiss

Defendant concedes Plaintiffs have standing to pursue their California and New York claims, but argues they do not have standing to represent the claims of consumers who reside in other states. Def. Br. 22-23. The question of whether Plaintiffs may pursue claims for proposed Class Members under the laws of states in which they do not reside does not implicate the Court's power to adjudicate this case under Article III and therefore "has nothing to do with standing." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("[A]pplication of choice-of-law principles has nothing to do with *standing* . . . .").

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), is controlling. In that case, the Second Circuit held that "to establish Article III standing in a class action for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied." *NECA-IBEW*, 693 F.3d at 159. The Second Circuit explained:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*Id.* at 162 (alteration, internal quotation marks, and citations omitted). After individual standing is established, "the inquiry shift[s] to a class action analysis." *Id.*; *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (discussing *NECA-IBEW* and stating that "[t]he core question is whether a plaintiff who has

20

a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant").

Sitt is also on point. In *Sitt,* the plaintiff alleged the defendants had deceptively labeled their dietary supplement products marketed to combat menopause as "natural," when in fact they were not because they contained a synthetic ingredient. *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *4. The plaintiff brought the action on behalf of herself and a proposed class of residents from a number of different states. The defendants moved to dismiss and argued that the plaintiff, a New York resident, did not have standing to bring claims on behalf of consumers from other states. *Id.* In rejecting the defendants' argument, the court stated:

> Here, Defendants do not contest that Plaintiff has Article III standing to assert claims under New York law as to all Defendants, and concede that Plaintiff has sufficiently pled that she purchased and was harmed by the Product in New York. Thus, because Plaintiff has standing to assert a claim directly against each of the named Defendants, Plaintiff has satisfied the Article III standing requirement for class actions. Defendants argue that Plaintiff bears a burden within the Article III analysis to further establish standing to bring claims under the law of every other state in the nationwide class by providing "particularized allegations" of the claims of consumers in other states. However, based on the Second Circuit's clear pronouncement of Article III standing in *NECA-IBEW*, Plaintiff has no further burden to demonstrate Article III standing. Plaintiff has sufficiently stated a cognizable injury by Defendants and has therefore established Article III standing.

*Id.* at *4; *see also Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277, 2016 U.S. Dist. LEXIS 14001, at *10 (N.D.N.Y. Jan. 15, 2016) ("Article III standing and class standing are different issues that require separate consideration; class standing is often considered at the class certification stage of the litigation.") (collecting cases); *Martinez v. Capital One Bank, N.A.*, No. 10-cv-8028 RJS, 2015 U.S. Dist. LEXIS 91417, at *8 (S.D.N.Y. July 13, 2015) ("[T]he Second Circuit considers the questions of Article III, statutory, and class standing as distinct."); *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F. Supp. 3d 417, 420 (S.D.N.Y. 2014) ("Article III standing is distinct from the issue of 'class standing,' i.e., standing to assert claims on behalf of

others."). Accordingly, Defendant's motion to dismiss the claims Plaintiffs seek to bring on behalf of consumers from other states for "lack of standing" must be denied.

### H.      The Court Should Deny Defendant's Motion to Stay

Defendant next asks the Court to stay the litigation on primary jurisdiction grounds. Contrary to Defendant's argument, the primary jurisdiction doctrine does not apply in this case. The primary jurisdiction doctrine is "relatively narrow" and "applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by congress in the first instance to an agency's determination, particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency." *Goya Foods, Inc. v. Tropicana Prods.*, 846 F.2d 848, 851 (2d Cir. 1988); *see also Frito Lay*, 2013 U.S. Dist LEXIS 123824. "Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015).

### 1.      The FDA has Expressed No Interest in Defining "Natural" as Applied to Cosmetics

Defendant would like to have this case stayed based on nothing more than speculation that the FDA may, at some undetermined time, begin the rulemaking process for the term "natural" as applied to cosmetics. However, the "FDA has not defined the term 'natural' and has not established a regulatory definition for this term in cosmetic labeling."[6] Indeed, unlike the term "natural" as applied to food, the FDA has failed to express any desire or intent to promulgate a rule defining "natural" for cosmetics.

Such speculation carries no weight. Even if it did, the recent change in agency-related

---

[6]    Small   Businesses   &   Homemade   Cosmetics:   Fact   Sheet,   U.S.   FDA, https://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm.

priorities between the Obama and Trump administrations leaves the future of FDA regulations unclear. What is evident, however, is that the current administration's plans to "streamline the FDA" and get rid of many regulations will impede the FDA's ability to issue new rules and regulations.[7] Last September, President Trump specifically called out the FDA as an abuser of federal regulations:

> The FDA Food Police, which dictate how the federal government expects farmers to produce fruits and vegetables, even dictates the nutritional value of dog food. The rules govern the soil farmers use, farm and food production hygiene, food packaging, food temperature and even what animals can roam which fields and when. It also greatly increased inspections of food "facilities" and levies new taxes to pay for this inspection overkill.[8]

On January 30, 2017, in furtherance of his promise to decrease federal agency regulations, President Trump signed into effect an executive order requiring federal agencies and departments to identify at least two existing federal rules that can be eliminated every time they issue a new regulation.[9] The executive order will slow down—if not stop—the adoption of new regulations and create a lengthier rulemaking process for the FDA. Indeed, well over a year into the Trump administration, the FDA has given zero indication of its renewed interest in the definition of

---

[7] President Trump Works to Make Drugs More Affordable, Create Jobs, The White House, Office of the Press Secretary, available at https://www.whitehouse.gov/the-press-office/2017/01/31/president-trump-works-make-drugs-more-affordable-create-jobs (last visited Oct. 23, 2017); Could the FDA be Dismantled Under Trump? STAT, available at https://www.statnews.com/2016/11/22/fda-donald-trump/ (last visited Oct. 23, 2017); Trump Tells Drugmakers He'll Tackle Prices, Politico, available at http://www.politico.com/story/2017/01/trump-drug-pharmaceutical-manufacturing-234423.

[8] How Donald Trump May Impact the FDA, Forbes, available at https://www.forbes.com/sites/johnlamattina/2016/11/14/donald-trump-and-the-fda/#623d76db4776 (last visited Oct. 23, 2017).

[9] Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs, The White House, Office of Press Secretary, available at https://www.whitehouse.gov/the-press-office/2017/01/30/presidential-executive-order-reducing-regulation-and-controlling (last visited October 30, 2017).

"natural" for human food products. Because the FDA has expressed no interest in defining the term "natural" as applied to cosmetics, this Court should not stay the case.

### 2.     The Cases Defendant Cites are Distinguishable

First, the Court should disregard cases put forth by Defendant to the extent that the cases relate to stays implemented for use of the term "natural" on human food products. Simply put, while the FDA has requested comments on the use of the term "natural" in food products well over a year and a half ago, the FDA has yet to issue any request for comments, let alone any indication of any desire to promulgate rules, on the use of the term "natural" on cosmetic products. For this reason, any food cases are distinguishable.

Next, Defendant's reliance on *Astiana v. Hain Celestial Group, Inc.*, is misguided. Def. Br. 24. In that case, on remand, the district court explicitly **declined** to invoke a stay on primary jurisdiction grounds. Rather, the court stayed the case based on the pendency of two appeals before the Ninth Circuit, which involved issues applicable to the case. *Astiana v. Hain Celestial Grp., Inc.*, Case No. 11-cv-6342-PJH, 2015 U.S. Dist. LEXIS 138496, at *4 (N.D. Cal. Oct. 9, 2015) ("[T]he court does find that the FDA's letter shows that the 'agency is aware of but has expressed no interest in the subject matter of the litigation.'"). Importantly, in *Astiana*, the FDA sent a letter to plaintiff's counsel stating, "we respectfully decline to make a determination regarding the term 'natural' in cosmetic labeling at this time." *Id.* at *5. The FDA has not changed its position since *Astiana*, and this Court should similarly decline to stay the case on primary jurisdiction grounds.

Further, courts are perfectly capable of determining the reasonable consumer's understanding of the term "natural" without assistance from the FDA. Indeed, decisions abound in which courts across the country have refused to apply the primary jurisdiction doctrine in factually analogous situations. For example, in *Goldemberg*, the court found that (1) it was well suited to

24

determine whether "Active Naturals" misleads consumers into believing that all ingredients in the product are "natural"; (2) the FDA was not contemplating the same issue regarding the term "natural" as applied to the case at hand; and (3) no prior application has been made by the FDA. *Goldemberg*, 8 F. Supp. 3d at 476-78. As a result, the court did not apply the primary jurisdiction doctrine. Here, the Court is faced with a nearly identical factual scenario—with Defendant using the name brand "Scott Naturals" to mislead consumers into believing the Products are natural, when they are, in fact, not natural. This Court should reach the same conclusion.

Finally, *Goldemberg* is not an outlier. Many other courts have similarly declined to apply the primary jurisdiction doctrine in cases involving similar misrepresentations. *See Gasser*, 2017 U.S. Dist. LEXIS 175273, at *28-31 (denying defendant's motion to stay on primary jurisdiction grounds for "natural" cosmetic products); *Brenner v. Proctor & Gamble Co.*, Case No. 16-cv-1093-JLC (JCGx), 2016 U.S. Dist. LEXIS 187303, at *20-24 (C.D. Ca. Oct. 20, 2016) (same); *Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 291-94 (D. Conn. 2015) (same); *Fagan v. Neutrogena Corp.*, Case No. 5:13-cv-01316-SVW-OP, 2014 U.S. Dist. LEXIS 2795, at *3 (C.D. Ca. Jan. 8, 2014) (same). For these reasons, the Court should decline invoke the primary jurisdiction doctrine and deny Defendant's motion to stay.

## V.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court to deny Defendant's motion to dismiss the Consolidated Complaint and alternative motion to stay.

Date: April 6, 2018                     Respectfully submitted,

By:     */s/ Jason Sultzer*
                Jason P. Sultzer, Esq.
                Joseph Lipari, Esq.
                Adam Gonnelli, Esq.
                **THE SULTZER LAW GROUP**
                85 Civic Center Plaza, Suite 104

25

Poughkeepsie, New York 12601
Tel: (845) 483-7100
*sultzerj@thesultzerawgroup.com*

Melissa S. Weiner, Esq.
**HALUNEN LAW**
1650 IDS Center
80 South Eight Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
*weiner@halunenlaw.com*

Michael R. Reese, Esq.
George V. Granade, Esq.
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone (212) 643-0500
*mreese@reesellp.com*
*ggranade@reesellp.com*

Edwin J. Kilpena, Jr., Esq,
**CARLSON LYNCH SWEET KILPENA**
**& CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
*ekilpena@carlsonlynch.com*

*Counsel for Plaintiffs and the Class*